IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| United States of America, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CR-23-210-RAW |
|  | ) |  |
| Jeremy Robert Harris, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## DEFENDANT'S MOTION TO SUPPRESS

Jeremy Robert Harris, Defendant (hereinafter referred to as "Mr. Harris"), through counsel undersigned, pursuant to Fed. R. Crim. P. Rule 12(b)(3)(C), moves this Court to suppress evidence seized in violation of his Fourth and Fifth Amendment rights. Specifically, any evidence obtained as a result of the illegal actions of law enforcement officers during a traffic stop of Mr. Harris' vehicle on September 25, 2023, should be suppressed. The evidence to be suppressed includes, but is not necessarily limited to, statements made by Mr. Harris and evidence of the alleged firearms and silencer found in the vehicle.

Mr. Harris requests that the Court set an evidentiary hearing regarding this Motion. Mr. Harris has not yet had an opportunity to cross-examine witnesses regarding the facts relevant to this Motion. Mr. Harris reserves the right to raise any and all arguments, including those arguments pursuant to the Fourth, Fifth, or Sixth Amendments, in support of suppressing the fruits of the search that occurred on or about September 25, 2023.

To provide the Government and the Court with notice of the issues that will be addressed at the hearing, Mr. Harris advises that he intends to make the following arguments in support of this Motion.

**Statement of Facts**

On September 25, 2023, at approximately 9:58 p.m., Officer Taylor Tate with the Kiowa Police Department stopped a vehicle driven by Mr. Harris on Highway 69 in the Kiowa area of Pittsburg County. A copy of Tate's narrative report is attached hereto as Exhibit 1. Tate states that the reason for the traffic stop was that Mr. Harris' van did not have a tag light. The van also had a tag that was not issued by any state.

Mr. Harris pulled into the Double Kwik convenience store parking lot (a private lot) and exited the vehicle with his dogs. Tate exited her vehicle and ordered Mr. Harris back into his van. Mr. Harris, who was wearing a pair of headphones, seemed confused and asked Tate what was going on. Tate instructed Mr. Harris to "get back in your car" several times, and Mr. Harris continued to ask what was happening. He also told her he was not armed and lifted up his shirt to demonstrate that he was not a threat. Tate rushes Mr. Harris and attempts to handcuff him within a minute of their interaction, and a scuffle ensues. At the beginning of the scuffle, Tate instructs Mr. Harris to drop the keys to his vehicle on the ground, which he does.

Tate places Mr. Harris in handcuffs and puts him in the back seat of her patrol car. At some point, Tate takes his keys and unlocks the driver's side door to Mr. Harris' van and begins to search without asking Mr. Harris whether he consented. She calls this an inventory search in her report, but it does not appear to be that. There does not even appear to be an inventory form cataloguing Mr. Harris' items. Tate unlocks every door to the vehicle during the search and steps inside of it through the back door. Towards the end of the search, she even pulls panels off the doors and interior. Tate finds firearms, ammunition, and some military grade equipment during the search.

Officer Tate finds out from dispatch that Mr. Harris has felony convictions on his record sometime after discovering the firearms and ammunition in his van. Although she intermittently asks

questions to Mr. Harris throughout the search, she does not read him his *Miranda* rights until much later in their encounter.

By indictment filed December 12, 2023, Mr. Harris was charged with possession of an unregistered firearm (destructive device) in violation of 26 U.S.C. §§ 5861(d), 5841 & 5871 and felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(8).

## Argument and Authorities

**A.    The government must prove that the search of the car falls within an exception to the Fourth Amendment warrant requirement.**

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "A routine traffic stop is a 'seizure' within the meaning of the Fourth Amendment." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Laughrin*, 438 F.3d 1245, 1247 (10th Cir.2006). "To be reasonable, a search generally requires a judicial warrant." *United States v. Venezia*, 995 F.3d 1170, 1174 (10th Cir. 2021). Warrantless searches, even those after a legitimate traffic stop, are presumed unreasonable unless they fall into one of "a few specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). *See also Arizona v. Gant*, 556 U.S. 332, 335 (2009) (search of vehicle after the defendant had been arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car was not justified).

Once a criminal defendant proves that the Fourth Amendment was implicated, "the government then bears the burden of proving that its warrantless actions were justified by an exception." *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021), *quoting United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020) (alterations in original omitted). In the present case, the traffic stop, and the government's search of the vehicle that Mr. Harris drove satisfy his burden of showing

3

that the Fourth Amendment governs the events of September 25, 2023. Mr. Harris has standing to contest the search of his vehicle. The seizures and searches were all conducted without a warrant. Therefore, the government has the burden of showing that an exception to the Fourth Amendment's prohibition against warrantless searches and seizures applies. As the Tenth Circuit noted in *Chavez*, in ruling upon this Motion to Suppress, this Court has a duty "to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Chavez*, 985 F.3d at 1240, *quoting Coolidge v. New Hampshire*, 403 U.S. 443, 454 (1971) (plurality opinion).

**B.     Officer Tate did not search Mr. Harris' vehicle as part of a lawful inventory search.**

One acknowledged exception to the warrant requirement is an inventory search after impoundment. *South Dakota v. Opperman,* 428 U.S. 364, 376 (1976). "This exception allows law enforcement to impound an automobile and, in connection with the impoundment, inventory the vehicle's contents." *United States v. Ramos*, 88 F.4th 862, 867 (10th Cir. 2023). "[A] warrantless inventory search of the vehicle does not offend Fourth Amendment principles so long as the search is made pursuant to standard police procedures and for the purpose of protecting the car and its contents." *Chavez*, 985 F.3d at 1242 (additional quotations and citations omitted). *See also United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997) (inventory search is "a well-defined exception to the warrant requirement of the Fourth Amendment"). "Such an impoundment, however, must be based on 'something other than suspicion of evidence of criminal activity,' such as 'protecting public safety and promoting the efficient movement of traffic.' *Id.* at 867 (quoting *Venezia*). "That is, a community-caretaking impoundment cannot be based on a suspicion or hope evidence of criminal activity will be found in the vehicle." *United States v. Ramos*, 88 F.4th 862, 867 (10th Cir. 2023).

In this case, Officer Tate claims that she discovered the firearms at issue during an inventory search. The government bears the burden of proving that its impoundment of a vehicle and the subsequent search of its contents satisfies the Fourth Amendment. *United States v. Ibarra,* 955 F.2d

1405, 1409 (10th Cir. 1992). In *United States v. Sanders*, 796 F.3d 1242 (2015), the Tenth Circuit noted that courts have considered the following non-exclusive list of factors in determining the lawfulness of an inventory search:

(1) Whether the vehicle is on public or private property;

(2) If on private property, whether the property owner has been consulted;

(3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle);

(4) whether the vehicle is implicated in a crime; and

(5) whether the vehicle's owner and/or driver have consented to the impoundment.

*Sanders* at 1250.

The government in the present case has the burden of justifying its warrantless search and seizure. The government would have the burden of proving Officer Tate conducted an actual inventory search and that she impounded the vehicle in accordance with standard policy that has a reasonable, "non-pretextual community-caretaking rationale". *Ramos*, 88 F.4th 862 at 867–68 (citing *Sanders* at 1248).

      Mr. Harris anticipates that the government will not carry this burden. In Mr. Harris's case, the vehicle appeared to be lawfully parked on private property, and there is no suggestion in discovery that the owner of that property was consulted about towing his vehicle. Additionally, law enforcement did not make any efforts to discuss an alternative to impounding the vehicle or involve Mr. Harris in that decision. None of the officers even attempted to discuss whether he had alternative means to get the vehicle off of the property. Instead, Officer Tate used his keys to unlock and search the vehicle without his consent, and she did not conduct a proper inventory of its contents. Therefore, this Court should reject any arguments the government might make that Tate was justified in conducting such an intricate search after a minor traffic infraction. The Motion to Suppress should be granted.

### C. Officer Tate conducted a custodial interrogation of Mr. Harris without first giving the required *Miranda* warning.

Law enforcement officers must give *Miranda* warnings to a person subject to "custodial interrogation." *United States v. Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000)(citing *Miranda v. Arizona*, 384 U.S. 436, 444(1966))(internal quotations omitted). *Miranda's* protections are triggered when a suspect is in a custodial interrogation. *See McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984)(quoting *Miranda*, 384 U.S. at 444). Officer Tate physically forced Mr. Harris into handcuffs and placed him under arrest within a minute of Officer Tate's encounter with him. She then made him sit in the back of her police car while she searched his vehicle and asked him questions intermittently without informing him of his *Miranda* rights.

In this case, the *Miranda* violation means that the government now cannot use Mr. Harris's statements in an effort to establish probable cause to search the vehicle. That is exactly what the Tenth Circuit ruled in *Chavez*. In *Chavez*, when the driver of the vehicle was taken into custody, he was asked if he was a felon, and he responded that he was. *Chavez*, 985 F.3d at 1238. Because the defendant had not been given his required *Miranda* warnings, the district court had ruled that the government could not use "this statement to show that the deputy had probable cause of a felon-in-possession crime to justify seizing the firearm." The violation of Mr. Harris's *Miranda* rights means that the Government cannot come into this Court and use Mr. Harris's statement to prove a factual basis for an argument that Officer Tate had probable cause to search the vehicle.

The Tenth Circuit agreed with the district court, providing this analysis of the issue:

[In ruling that the *Miranda* violation prohibited the government from using the statement to show probable cause,]the district court relied on *Vogt v. City of Hays*, 844 F.3d 1235 (10th Cir. 2017). We do too. There, we considered whether the Fifth Amendment's self-incrimination protection applies in "a hearing to determine probable cause." *Id.* at 1241. Holding in the affirmative, we noted that the Fifth

> Amendment protection against self-incrimination "is more than a trial right," and that the Fifth Amendment's reference to a "criminal case" "covers pretrial proceedings as well." *Id.* at 1241–42. In view of this, we can think of no reason why *Vogt's* ruling would not cover suppression hearings, in addition to preliminary hearings assessing probable cause. From this, we agree with the district court that *Vogt* bars the government from relying on Mr. Chavez's un-Mirandized statement at the suppression hearing—even if the statement were voluntary (but considered coerced for Miranda purposes). *See Elstad*, 470 U.S. at 306–07, 105 S.Ct. 1285 (noting that because the Miranda exclusionary rule "sweeps more broadly than the Fifth Amendment," "patently *voluntary* statements taken in violation of *Miranda* must be excluded from the prosecution's case," (citation omitted)).

*Id.* at 1245-46(emphasis in original).

Similarly, in a suppression hearing, or for any purpose relating to this Court's consideration of this Motion to Suppress, this Court should not consider any of Mr. Harris's statements as to whether there was probable cause for Deputy Tate to search the vehicle. Mr. Harris was not free to leave, and he was in custody for purposes of the Fifth Amendment and the requirement to provide *Miranda* warnings. *Miranda v. Arizona*, 384 U.S at 467(Fifth Amendment privilege is available to protect persons "in all settings in which their freedom of action is curtailed in any significant way"). Before interrogating him, Tate was required to notify Mr. Harris of his right to remain silent. *See United States v. Cash*, 733 F.3d 1264, 1277 (10th Cir. 2013) (when an individual is in custody during a traffic stop, question that officer reasonably knew was likely to elicit an incriminating response is "interrogation" for purposes of application of *Miranda*). For exactly the same reasons that the defendant's admissions in *Chavez* could not be considered by the court, Mr. Harris's statements cannot be considered by this Court.

## Conclusion

Evidence taken in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure. *United States v. Calandra*, 414 U.S. 338, 347 (1974). If a search or seizure violates the Fourth Amendment, the "exclusionary rule" prohibits the admission of the "fruits" of illegally seized evidence, i.e., any information, object, or testimony

7

uncovered or obtained directly or indirectly as a result of the illegally seized evidence, or any leads obtained therefrom. *Wong Sun v. United States,* 371 U.S. 471, 487-88 (1963). In Mr. Harris's case, all of the evidence seized resulted from violations of the Fourth Amendment. Furthermore, his statements were taken without *Miranda* warnings and in violation of the Fifth Amendment. This Court should grant this Motion and suppress the evidence.

    Respectfully submitted,

    OFFICE OF THE FEDERAL PUBLIC DEFENDER
    Scott A. Graham, Federal Public Defender

    By: */s/ Richard Koller*
    Richard Koller, OBA No. No.22877
    112 North Seventh Street
    Muskogee, Oklahoma 74401
    (918) 687-2430
    *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 27, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrant(s):

Jessica Bove - Assistant United States Attorney

    /s Richard Koller